Good morning. My name is Steven Biggs. I represent the appellant Patrick Carter in this appeal. This is an appeal from a discouragement award in an SEC enforcement action. And for those discouragement awards, the SEC must satisfy the following standard to receive that as a remedy for a securities law violation. First, the SEC bears the burden of proving a reasonable approximation of the amount of a defendant's net profits attributable to the securities law violation. If the SEC meets that burden, then the burden shifts to the defendant to show that the approximation was not reasonable. This case raises two issues under that burden shifting framework. First, was the SEC required to support its reasonable approximation with admissible evidence? And second, if it was, was the testimony of its accountant about the amount of money Carter received from the sale of his founder shares admissible as summary evidence under Rule 1006? Counsel, a number of courts, although not this one, have held that the requirement to use the rules of evidence is waivable and that it's in fact waived by an agreement similar to the one that your client signed. What's wrong with that? Well, first here, there wasn't a waiver. And the cases that were cited in the I'm sorry. I thought that Mr. Carter agreed that the motion could be resolved using affidavits and other documents without regard to the standards of summary judgment contained in the rules of civil procedure, which would seem to allow a broad range of materials. Now, the reasonable reading, I think, of that particular provision in the consent judgment is what the Western District of Washington in the SEC v. Meridon mining case said. Said the court would review the SEC's motion essentially as a trial on the papers in which the court makes factual determinations based solely on the documentary evidence the parties provided. I think the rational reading of that language is not that either party was waiving objections to the admissibility of evidence or the application of the federal rules of evidence, but instead that the parties were recognizing this was a trial on the papers and that the court, contrary to a summary judgment standard, would actually make factual findings, weigh evidence, and make factual determinations. If you apply the summary judgment standard, which would normally apply if the SEC came in on a motion and there was going to be hearing, the SEC would have to show that there was no genuine dispute as to any material fact, and it was entitled to judgment as a matter of law. What the parties agreed here was that wasn't the standard that applied, but simply the parties could submit their evidence on the papers, and the court could then evaluate that evidence, make factual findings about it, and weigh the evidence. That's what... Can I ask you, though, because there's another agreement in this case that isn't really focused on in the briefs, but Carter, your client, agreed through the consent agreement that the allegations of the complaint shall be accepted as and deemed true by the court for purposes of determining the disgorgement amount, and one of the complaint's allegations is that he received $14 million for the founder shares. So it seems like your whole dispute here is about the evidence of the amount of money he got from the founder shares, and you're saying that SEC didn't have enough evidence that it was about $13 million, but the complaint says it was $14 million, and you agreed to take the complaint as true. So why doesn't that get rid of this whole dispute, because $14 would be worse for your client than $13.4 or whatever. So why doesn't that eliminate this entire thing? That doesn't eliminate it. The SEC chose not to rely on that allegation in its motion for its disgorgement award. It didn't present that as the evidence it was relying on, and the complaint does contain that allegation. That says the court can, so why aren't we the court at this point? I mean, why? I don't understand. Well, go ahead, but I'm not sure I understand that response. Okay. So that allegation is in the complaint, and what the court was supposed to look at is, what was the under the lieu case? What the court's looking at is, what was the net profit that the defendant received from the securities law violations? What the complaint's made by the sale of those founder shares. The complaint is not clear on who received that money. I think it is clear. It says Mr. Carter sold the majority of his founder shares, raising approximately $14 million, and if you look at the calculation of the disgorgement, which is at ER 304, it's just the first line of the calculation that we're talking about. So the founder shares proceeds on ER 304 says $13,400,000, et cetera, and this is just exactly founder shares proceeds, isn't it? Well, that's assuming all those proceeds were paid to Carter. Well, it says, I mean, how else can that be interpreted? How else can the complaint be interpreted? I think that the complaint's allegations are that. The complaint also has a different spot where it talks about how he received a little over $3 million from the sale of the founder shares. Oh, and so then there's paragraph 134 of the complaint. I was reading earlier from paragraph 4, I think, but ER 41 at paragraph 134 says, Carter made nearly $14 million through the sales of his founder shares. That seems like Carter got the money and it was $14 million from the sales of the founder shares. So that's in the complaint, and he said we could take all of that as true. I think part of the issue here is the SEC then came forward on this motion and presented a different figure. Well, they didn't have to. So would you rather have it be $14 million? It was better for you. It was the SEC's burden to come forward with that, and they presented a different number, and that's part of the issue here. But it's a lower number, so why is it better for your clients? Basically this is a harmlessness argument. So they came up with a better number for you, and you're saying we don't like that better number. But if you win, it's going to be worse for you. So why isn't this error harmless? Right here is, again, this is the SEC's evidence that it came forward with the motion was its accountant's declaration. And its account tried to break these things down. I understand that the complaint has very raw numbers that are alleged in it. The accountant then came forward with specific numbers that he said were supported by these records. But so far, counsel, you have not explained why we can't simply accept what's in the complaint when it states the allegations of the complaint shall be accepted and deemed true by the court. Aren't you stuck with that? I think he's stuck with that. If the SEC had come forward and said... But why does the SEC have to do anything? Why couldn't the court have simply said, why can't we just say, well, we'll just look at the complaint. It's deemed to be true. End of discussion. We don't have to even deal with all these evidentiary matters at all. Well, under the burden shifting framework, it is the SEC's burden to come forward with the evidence. Not if your client says that the allegations of the complaint shall be accepted and deemed true. And the district court, I think part of the issue is below, no one relied on that 14 million. Well, the court quoted it in the judgment, in the order, excuse me. I don't believe that the court, and I never saw where the court actually relied on that number. Page ER6, the court, it doesn't stop there, but the court quotes that in its discussion, but ended up, as Judge Friedland points out, doing something slightly more advantageous to your client. And I never saw that actual allegation of the 14 million quoted in the court's entry at ER6 is the number that the SEC's accountant gave in his declaration as the final, his final discouragement calculation. And that's the issue here is that this is not like other cases where the SEC has simply said, the evidence that we're presenting to give our reasonable approximation is this number from the complaint. The SEC recognized that that number was not the accurate number, and it had a duty of candor to the court to try and give what was the accurate number. It gave a number that was less than that, but then it failed to support that number with any admissible evidence. And so at that point, So your argument has to be that Rule 1006 doesn't apply? No, our argument would be that Rule 1006 applies in this case, but this was not admissible under that rule. And maybe I'm phrasing it differently. Our argument is that the rules of evidence apply here, that Mr. Carter did not waive the application of the rules of evidence, and that under Rule 1006, this was inadmissible because it doesn't constitute summary evidence. And the reason it doesn't constitute summary evidence is that this is not a summary. It's a statement of a single figure. And if you look at paragraph 13 of the accountant's declaration, which is found in the record on pages 355 to 356, the accountant makes it very clear that what he has given is the end result of calculations he made by creating other summaries. He says, Based on my review of the bank records and other documents noted above, I created several summaries like spreadsheets, tables, and charts that contain simple mathematical calculations, which I used to make reasonable approximations regarding how much money in these bank accounts came from investors. And pursuant to the rule, the declarations, as I recall it, say we will make all the underlying documents available if desired, which is required under 1006. So why isn't that sufficient? Because the summary rule, the purpose of it is for the witness to present material about the contents of records to the court. And all of those were available according to the declaration. All of them were available, but none were submitted. So what basically... Well, but it's your client who sold these shares. So, I mean, why shouldn't he have some obligation to say, Well, wait a second, I only made $12 million or whatever. I mean, the documents are there that show what he made. He's the one who did it. It seems like they're saying, Here's how we added up, and here are the documents. And why can't he look at them and say, Well, the calculation's wrong? That's the very point on this one. He's not showing how he added these up. He's just giving a raw number. But your client has never rebutted factually. All you've said is, Well, they didn't do enough. But all the materials were there underlying what I'll call a summary or a conclusion. And all the documents were available to your client. And yet there is nothing that says that these numbers are not accurate. There's just argument about process, essentially. Yeah, our argument is that the burden never shifted to our client because the government did not come forward with evidence supporting its reasonable approximation on this particular aspect, just on the founders' shares. Not that we received. But you agree that the summaries are, with respect to the disbursements, are accurate? So we're not contesting on the... You're not contesting. We're not contesting the other three categories where he actually attached the spreadsheets and the backup, basically. The things that we would say actually are summaries. Which had to do with what went out. Yeah. So what you're saying is that what was not substantiated by documents or summaries or anything else is what went in. I take it you did not represent... I did not. I am only a public counsel. What happened was the accountant explained it was more than just, I added up a few numbers of money that came in. He actually explains in paragraphs 13 through 16 of his declaration, mostly 13 through 15, that what he did is he first looked at these investor records. And he would see how much the people invested. Then he would go back and check against bank account records to see where funds went from one bank to another, where deposits went. He tried to match those up. So this was a multi-stage process. That's why it would be unfair to allow the account to simply come in and say, this is my raw number. I'm not going to give you any of the backup, though I made all these spreadsheets. And you should accept this as a summary. Because that's not a summary. How many transactions were needed to sell the founder shares? That's not in the record. And having not been trial counsel, I can't give you a number. And I apologize. I equate this to like a math problem, where the student just gives the answer, but the whole point was to show your work. So the teacher knew that the student understood it. I'm just wondering how complicated the math problem is. I mean, even having to trace the bank accounts, if it's only like three sales, and here are the three people who he sold them to, and they look at the bank accounts, like that's not that hard to add up. No, my understanding is based on the allegations in the complaint that there was over 300 something investors. This was a significant number of investors who invested in this and paid for this. And it would have taken time to go through and actually add those up and see if they matched up. If there are any other questions, I'll reserve the rest of my time for rebuttal.  That's all right. Good morning, your honors. This is John Rady on behalf of the Securities and Exchange Commission. The question in this appeal is whether the district court abused its broad discretion in calculating and ordering disgorgement based on the commission's evidence of how much money Carter raised from the sale of his own founder shares in 808 Renewable that Carter chose not to rebut with any evidence of his own. When the district court denied the commission's previous motion for disgorgement, it laid out its concerns with the commission's evidence, and it made clear that Carter was entitled to depose the commission's accountant and obtain all relevant documents so that he would have an opportunity to rebut the commission's proposed disgorgement amount. The commission's renewed motion addressed the court's concerns, and Carter has presented no reason to second-guess the district court's determination that the commission met its burden of persuasion to reasonably approximate disgorgement. Carter argues that some portion of the account's declaration, including that he raised some $13.4 million from the sale of his own founder shares, was inadmissible, but that evidence is admissible under Rule 1006 as summary evidence. The district court was well within its broad discretion to consider it in the context of an equitable determination about the appropriate remedy, and especially, as has been pointed out, with a complaint twice alleged that he raised approximately $14 million from the sale of his own founder shares. Tell me, there was an original motion by the SEC that was very conclusory, and that was rejected. Is that correct? It's correct. More or less. More or less, I think that's accurate, Your Honor. The district court was concerned, I think, with, specifically, whether there was enough information. The court sort of went through it, and there were two specific sort of transactions that Carter tried to argue that. It was unclear whether from that declaration, whether they were actually including the proposed disgorgement amount. I think one of the district court's conclusions was, well, it's sort of so unclear that he's not able to come forward and actually come forward with specific rebuttals. So we want the commission to be able to present that type of evidence for Carter to engage in that. You know, the commission was endeavoring to do that, and that's exactly what it did in this case. Okay, so the basis for the calculations as to all the disbursements seem there and are not challenged. That's correct. Carter's not raised that. And what is challenged is the basis for the calculation of what he received. That's correct. How do we know what that is? Well, I think we know it from a number of sources. First of all, we know it from the account, the declaration. I would point the court specifically to paragraphs 14 and 17 of that declaration. I think 14 is the most on point for laying out how the accountant determined what were inflows in general terms. And paragraph 17 of that declaration goes through. But I can't figure out how this number was achieved. I mean, how can you point to any case where rule 1006 allowed admission of something where there's just no way at all to follow someone's work and check whether they did it right? I mean, it doesn't say really anything specific about how this calculation was done. Well, Your Honor, I disagree with that characterization somewhat to the extent that which I think paragraph 14 is really going through the documents that he reviewed and the methods that he used. And I think paragraph 6 and 13 also reference the types of this relatively simple mathematical calculation. But wouldn't you usually have a chart? For other parts of the calculation, there are charts. And it's like this one is $100,000 and this one is $200,000. And it allows someone to go to that document and see whether it was transcribed correctly. But this is just a lump. There's nothing that tells us how you get to 13.4. Your Honor, again, I understand that there isn't something like a summary table or a chart in this case. What I would say is the text of rule 1006 itself, it mentions calculations. It's not that it's only summaries, tables, or charts that are allowed to be admitted under summary evidence. And I think a case that would be useful to look at is United States versus Aubrey from this court. And I think what's going on in that case, that's a case about the background is that it's the defendant who's charged with misappropriating funds from that were earmarked to build affordable housing on Indian reservations. The government put on a forensic accountant who sort of waded through the mess of showing, you know, the defendant had mixed funds. He gave testimony and also gave summary tables and charts that, you know, all of that was supporting his calculations. So I think that's a similar situation to what's going on here. Sounds like there, though, there were charts. I mean, here there's no chart. That's true, Your Honor. But again, I don't think, you know, number one, if we're talking about rule 1006, I think the review would be on an abuse of discretion, whether, you know, the district court, I think in its first denial made clear, you know, it has the eye on the ball here. It wants Carter to be able to have the opportunity to review these documents, understand the calculation. If Carter had specific objections, if he said that he didn't understand what was going on, he absolutely would have had the opportunity to be able to do that in front of the district court. But the district court was satisfied that the commission... I mean, I guess I read the district court as a little ambiguous, but I think the district court relied more on waiver. So in any way, we have to figure out whether this was proper. So I mean, but, you know, to the extent the district court relied on waiver, the district court wasn't grappling with this rule 106. And then we've got to figure out was the waiver valid. So I'm not sure we can get out of this by just saying, well, this report did. I think that's true. I think it is true. And obviously, our debrief takes the position that it did not make explicit determination under rule 1006. I would also say, but I think many of the same types of inquiries, what the court was saying, you know, it said the accountant, you know, points to his methodology, explain that in further detail. He attached certification to the relevant bank records. He did all of that. It was all beautiful with respect to all the disbursements. And I just, it does seem a little inconsistent at the district court if it were to say, okay, this lump of 14 million or 13.4 million or whatever is fine. And then insist on the adequate summaries and documentation with respect to the disbursement. Your Honor, I don't think it's inconsistent. And I think the reason why is, I think, you know, one theme I think that emerges through the cases that are cited by both parties is that more complicated things get more complicated showings of what's going on here. So if we're talking about something, you know, when we're going, when the accountant is listing through all of the specific expenditures, he claims aren't legitimate business expenses. You know, it would make sense, I think, to require more detail exactly to be able to, you know, let Carter to be able to rebut those specific transactions with his own evidence. If he wants to say, you know, no, this specific, you know, whatever this specific expenditure was on, the commission says actually it was on Y. If he wants to come forward and do that, he can do that. But here, we're talking about information that Carter undoubtedly has access to. It's the sale of his own shares to investors. But what is the, what is the, what is, what is the commission's position with respect to the allegations of the complaint and their bearing on this? I think the commission's position would be, it is certainly relevant that the court would be able to consider it. You know, we, we, obviously our brief here, we mentioned that at page 24. In the reply brief below, it was brought up on page 721 in the excerpts of record here. It's referenced in the reply brief, and it was referenced in previous rounds of briefing as well before the district court. But the commission's position is, you know, when it comes into court and is presenting a specific number, as it did here, it didn't come in with $14 million. If it comes in, it does bear the burden of persuasion to actually show why that's a reasonable approximation. I'm sorry, I didn't quite hear what you said. So why are you not relying on the $14 million? Just say that again, because I didn't catch it. What the commission did, it did come in with a figure that is less than $14 million, obviously. It came in with a specific dollar amount, and we're not retreating from the position, and we're not saying that it's not our burden to show whatever specific number we come in with. We have to justify, you know, to a sufficient degree under our burden of persuasion. So again, we're. Are you saying we couldn't just rely on the $14 million in the complaint to resolve this case? I don't think the court is required to do that in this case, Your Honor. Are we permitted to do it? As a means of showing that there's no rebuttal by Mr. Carter, essentially, because if he agreed that everything in. It just seems inconsistent. If he has specifically agreed to the allegations in the complaint as being true, and the allegation is nearly $14 million, I don't see how he can be allowed to rebut, I guess, is what I'm saying. Not that it's because nearly $14 million is not specific enough, but it just seems. I guess I don't know quite what to, how to phrase it, but it seems to me that he can't be now heard to complain of the calculation. Your Honor, I think I would agree with that characterization, but again, I would just, the commission came in with a specific dollar amount. It put on its evidence about that specific dollar amount, and I think Carter's shown no reason why that specific dollar amount is incorrect. So say we think that you're wrong, that that specific dollar amount is supported. Do we need to remand, or can we affirm on the alternative ground that he admitted $14 million? Your Honor, I'm not sure of the answer to that question, I have to say. I would point this court, there was a decision in Securities Exchange Commission versus Yang that was recently decided, and I think it's essentially the opposite here, or not the opposite here. It's a different setup to here, where there was a complaint that alleged a specific amount. The commission came in with evidence that was more than that, and this court, in a summary  anticipates that the commission's going to come forward with evidence, and that's exactly what happened here, in both of those cases. If Your Honor, so what in the agreement, so maybe I missed part of this, but so the agreement, the consent agreement said that he would take everything in the complaint as true. Does it also say, and we're not really going to take it as true, we're going to give evidence, or what are you pointing to when you're saying that they anticipated this? Yeah. You said, you just said something like the agreement anticipated that we would come forward with more evidence. I think from the language of the agreement, I'm just reading, saying, said, you know, the court shall determine the amount of discouragement adhering upon the motion of the SEC, and it's going to be able to decide it on the basis of affidavits, declarations, excerpts of sworn deposition, or investigative, those portions that anticipate that it's going to be decided on evidence. Of course, there are cases. There is evidence of the outflow. So this whole dispute is of the inflow, as Judge Schroeder was asking. There is additional evidence of the outflow here that's more detailed and has charts, right? I don't dispute that, but again, that's not to say that there isn't evidence of the inflow from the accounts declaration, which is supported both by going through the types of documents that he reviewed, providing certifications of records for those documents, and then also explaining his methodology in the ultimate conclusion. So one of the arguments that your opposing counsel makes against the waiver argument is that in these consent agreements where it has this reference to not following Rule 56C, the SEC makes evidentiary objections. Is that true? What I would say is that I think the types of objections that courts have addressed under that, the ones that Carter pointed to, I think it sort of underscores exactly what this provision is designed to do, and that's really allow the district court to get to the ultimate question of whether the commission's met its burden of persuasion. So just walking through two of those. The first one in SEC versus Voight, I think the issue there was that the court found that specific declarations weren't relevant to the determination of what the disgorgement amount was. There were declarations that were essentially trying to re-argue the liability question. You know, these weren't fraudulent transactions. There wasn't a Ponzi scheme going on here. What the district court there said was, you've already admitted this in the complaint that these were securities, that you committed securities fraud. This isn't relevant to calculating the disgorgement amount, and so I'm not going to consider that. In another case, this is the Rainmaker case. But I think the theme is that, you know, in the Rainmaker case, the issue was that there were essentially on-the-ground fact witnesses, and the court was concerned that it didn't, that those witnesses didn't provide any reason, any reason to have personal knowledge of what was going on at the time. So I think those are completely in line with the idea that what this is really allowing the district court to do is to give it the discretion to consider evidence that it would find reliable and persuasive to calculating disgorgement. And now, but you're, so you're really saying that when he agreed to the allegations of the complaint, what he was doing was agreeing that he had committed fraud and all these other things. Or was that what you, not necessarily the amount? No, not at all, Your Honor. Okay. He is agreeing to the allegations of the complaint. I guess the only point is that I think this is a little bit of a different case than what, I think the best sort of counter to this case is SEC versus Linden. That is a case where the district court did rely on the allegations of the complaint alone. I would say the difference there is that there was no approximately there. There were specific dollar figures that were alleged and that allowed the district court just to add very specific dollar figures up to get to the amount of disgorgement. So I think that's the distinction there. I'm happy to answer any other questions that Your Honor's may have. I see my time is getting low, but if nothing else. Counsel. Restroom and briefs. Thank you. Let's give two minutes for rebuttal. Just two points that I have. First, the district court did not find a waiver here. We know that because when the district court ruled on the earlier motion for monetary remedies, one of the reasons that the court denied it without prejudice was the court said that it wasn't certain whether the testimony from the accountant was being offered as expert testimony or whether it was being offered as lay witness testimonies. And the judge said, look, if this is expert testimony, I think it runs afoul of 702. You haven't met the 702 burden. The court clearly envisioned that it would be applying the rules of evidence in this case, and the court didn't make a specific ruling on the 106. The court just simply said, in other cases, courts have allowed summaries like this to come in. So it may have implicitly decided rule 106 applied, but the standards weren't met here. The second point I had was that one of the reasons the court can't rely on that 14 million number just to say, okay, this is harmless error, we're just going to allow it to go forward, is exactly what we've been discussing. The SEC came in with a number below that. The SEC acknowledged that 14 million number was incorrect. I understand that 13.4 gets towards it if we're rounding up, but that's still a $600,000 difference. And assume, for example, if the SEC had alleged 26 million, and then it came in and did its analysis that it was 6 million. I mean, there's a duty there to come to the court when you realize that your number's wrong, and to present a figure. And the standard requires the SEC to come forward, it's its burden, with a reasonable approximation of the net profits. I think it's important that this complaint was also filed before Lew was decided, which somewhat changed the law in this circuit as to what could be considered with respect to a disgorgement award. And then the decision was decided after Lew. So the SEC had to go back and actually change its approximation number based on some of the things that the court decided. Wait, I'm sorry, maybe I'm missing. Doesn't it only change the outflow, not the inflow? Well, here, and that's part of the issue. That's, we don't know that this is, I've heard discussion that this was just the inflow, but the problem is, is the way that the accountant describes how he did these calculations, he wasn't just looking at that. He says, okay, I look at where the investors would make investments. Then I'd see where that money goes. Then I'd see if it flowed here, or if it flowed in this bank account. Or a client. This is him selling his own founder shares, I thought. This line item is his proceeds from the sale of his founder shares. It was, and my understanding is that some of those proceeds were actually paid to 808 Renewable Energy. Okay, but that's outflow. The question is, how much did he get first from the inflow of selling his shares? And then you might have expenses that can be counted as legitimate expenses. And I think the only thing that changed is what can count as the legitimate expense payments, right? Not the inflow of what he received to start with. Correct. Assuming that he actually received those payments rather than the payments for his shares going to 808 Renewable Energy Corporation. Well, the affidavit says this is what he personally received. You're talking about the declaration of the account? Declaration. Yes, he says based on his analysis, which included looking at money that came from 808 Renewable Energy's bank accounts into Carter's bank account. So some of these investors, it's my understanding, would make their payments to, even though they were for Carter's shares, would make them to 808 Renewable Energy. And 808 Renewable Energy would then remit money to Carter. So this isn't just a simple, I'm looking at the bank accounts to see every payment that was made to Carter. This is actually a tracing exercise that this accountant is undergoing to try and figure this out. And he found out that the number was not $14 million. It was something less. I know I'm over my time, so unless you have any other questions. Thank you. Thank you both sides for the helpful arguments. This case is submitted and we are adjourned for the week. All rise.
judges: SCHROEDER, GRABER, FRIEDLAND